**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 13-cv-00136-REB

PEGGY LOPEZ,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

**ORDER AFFIRMING COMMISSIONER**

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[1] filed January 22, 2013, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that she is disabled as a result of lupus, arthritis, chronic bilateral wrist and hand pain, fibromyalgia, and depression. Plaintiff filed an application for

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

disability insurance benefits in 2004.[2] After the application was denied, plaintiff requested a hearing before an administrative law judge. Following protracted proceedings at the administrative level,[3] a hearing was held on May 17, 2012. At the time of this hearing, plaintiff was 47 years old. She has high school general equivalency degree and past relevant work experience as a blackjack dealer. She did not engage in substantial gainful activity between February 25, 2004, her alleged date of onset, and March 31, 2006, her date last insured. *See* 20 C.F.R. § 404.131(a).

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits. Although the evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. Plaintiff's alleged mental impairment was found to be non-severe. The ALJ found that plaintiff had the residual functional capacity to perform a range of sedentary work that permitted a sit/stand option and imposed further postural, manipulative, and environmental limitations. Although this determination precluded plaintiff's past relevant work, the ALJ concluded that there were other jobs existing in significant numbers in the national and

---

[2] Plaintiff apparently did not appeal the denial of a previous application for benefits filed in 2001. (*See* Tr. 69.)

[3] Plaintiff's first hearing was held on September 26, 2006. The ALJ issued an unfavorable decision, but the Appeals Council remanded the case for additional development of the record. (Tr. 93-96.) A second hearing was held on January 10, 2008, and also resulted in an unfavorable decision, which the Appeals Council upheld. Plaintiff appealed to the district court, but the case was remanded on the Commissioner's motion. (*See* Tr. 615-620). Following a third hearing on February 1, 2011, the ALJ issued a partially favorable decision, finding that plaintiff was disabled as of January 11, 2010, but not before. (Tr. 702-724.) However, because this determination erroneously failed to recognize that plaintiff's date last insured was March 31, 2006, the Appeals Council again remanded for consideration whether plaintiff was disabled prior to her date last insured. It is the ALJ's determination following this fourth hearing that forms the basis of the present appeal.

local economies that she could perform. The ALJ therefore found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

      3.      The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

      4.      If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

      5.      If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f). **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. **Bowen v. Yuckert**, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. **Casias v. Secretary of Health & Human Services**, 933 F.2d 799, 801 (10th Cir. 1991).

     Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. **Hamilton v. Secretary of Health and Human Services**, 961 F.2d 1495, 1497-98 (10th Cir. 1992); **Brown v. Sullivan**, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. **Brown**, 912 F.2d at 1196. It requires

more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

### III. LEGAL ANALYSIS

Plaintiff avers that the ALJ's residual functional capacity assessment is not supported by substantial evidence, that he improperly discredited her subjective reports of pain and other limitations, that he erred in weighing the various medical opinions of record, that he failed to inquire of the vocational expert regarding an apparent conflict between the jobs identified at step 5 and the *Dictionary of Occupational Titles*, and that he failed to consider whether plaintiff's return to work from 2007 to 2010 qualified constituted a trial work period or entitled her to a closed period of benefits. Finding no such reversible error in the ALJ's decision, I affirm.

Plaintiff first argues that the ALJ's residual functional capacity assessment is insupportable because it failed to consider the combined impact of all her impairments, both severe and non-severe. At step two of the sequential evaluation process, the ALJ must determine which of the claimant's alleged impairments are "severe." 20 C.F.R. § 404.1521. An impairment is not considered severe if it is merely a "slight abnormality or

a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." **Social Security Ruling 85-28**, 1985 WL 56856 at *3 (SSA 1985).  Yet even if an impairment is found not to be severe under this admittedly lenient standard, it still must be considered in combination with all other impairments:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.

20 C.F.R. § 404.1523.

Plaintiff maintains that the ALJ failed to consider the impact of depression on her functional capacity under these standards.[4]  Yet while the evidence of record before plaintiff's date last insured demonstrates that plaintiff was diagnosed with depression, she was found to have mostly minimal to moderate impairment in all relevant areas of work-related mental functioning (*see* Tr. 239-240), with only one source suggesting "moderate to marked" impairment in the realm of adaptation (Tr. 362), even at a time

---

[4] Plaintiff also claims that the ALJ failed to consider the combined effect of chronic pain and fatigue related to lupus and fibromyalgia.  Since all these conditions were found to be severe, however, this argument is more appropriately considered as a challenge to the ALJ's credibility determination, which is discussed *infra*.

when she reported was taking no medication to treat depression (*see* Tr. 361, 364).[5] Plaintiff points to nothing in the record that contradicts these assessments, and, in fact, my own review does not reveal any evidence suggesting that any omission in this regard was anything more than harmless.[6] *Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir. 1988).[7] I therefore perceive no reversible error on this basis.

Relatedly, plaintiff suggests the ALJ failed to apply the required test for assessing her subjective complaints of pain and fatigue in formulating her residual functional capacity. The Tenth Circuit has outlined a tripartite test for evaluating subjective complaints of pain:

> We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

---

[5] Although Dr. Stephen B. Goodman found that plaintiff suffered from chronic depression, he is not a mental health professional, his examination pertained to plaintiff's physical impairments, and he did not assess any particular limitations as a result of depression. (Tr. 363-366.) Moreover, his statement that plaintiff's depression "is a significant factor that limits her ability to work outside the home at this time" (Tr. 366) goes to an issue reserved exclusively to the Commissioner, *see* 20 C.F.R. § 404.1527(e); *Sosa v. Barnhart*, 2003 WL 21436102 at *5 (D. Kan. April 10, 2003), *adopted*, 2003 WL 21428384 (D. Kan. Jun. 17, 2003). I therefore cannot find that more specific consideration and/or discussion of this evidence would have changed the ALJ's disability decision. *Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir. 1988).

[6] The record supports a conclusion that, despite early difficulties in finding a helpful medication (*see* Tr. 336, 340, 343-345, 348-349, 351, 353-354, 364), after plaintiff's treating doctor trying Cymbalta in June 2005, plaintiff reported at her very next visit that she was no longer depressed. (Tr. 428-429.) The following month, she confirmed that "Cymbalta has been helpful" and that "[o]verall, her mood is better." (Tr. 426.)

[7] Moreover, the ALJ confirmed that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" in accordance with application regulations and rulings. (Tr. 585.) The substance of his opinion gives me no reason to doubt that he did so. *See Cox v. Apfel*, 2000 WL 1472729 at *8 (D. Kan. Feb. 24, 2000) (statement that ALJ considered the "entire record" sufficient when record provides no reason to question its validity) (citing *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498-99 (10th Cir. 1992)).

7

*Musgrave*, 966 F.2d at 1375-76 (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). *See also* 20 C.F.R. § 404.1529(a). Nevertheless, "credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (citing *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)). So long as the ALJ links his credibility assessment to specific evidence in the record, his determination is entitled to substantial deference. *Id.* at 910; *see also Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Plaintiff's suggestion that the ALJ failed to give specific reasons linked to the evidence for his credibility determination is clearly belied by the record. The ALJ thoroughly and exhaustively reviewed the voluminous evidence in this matter, including both objective medical evidence and other evidence probative of plaintiff's claims of disability. (Tr. 586-591.) Therein, he thoroughly vetted plaintiff's various impairments and complaints, noting a lack of objective evidence to support the level of pain and limitation plaintiff alleged. Although the lack of such evidence standing alone is not sufficient to discredit a plaintiff's allegations of pain, *see* 20 C.F.R. § 404.1529(c)(2), this was not the only reason cited by the ALJ for finding plaintiff's complaints less than fully credible. For example, he clearly relied on the not-inconsequential observation that plaintiff returned to her previous job as a blackjack dealer in January 2007, despite acknowledging that her condition had not improved between her alleged date of onset and the time she started work (Tr. 585, 588-589, 980). *See* 20 C.F.R. § 404.1520(b) (claimant who is performing substantial gainful activity, claimant is not disabled

regardless of medical condition, age, education, or work experience). The ALJ also noted that plaintiff was reported as being "active in the home" insofar as she was "raising two of her own young children and ha[d] taken on the tasks of a foster parent" as well. (Tr. 590, 366.) Although activities of daily living do not necessarily translate to the ability to perform work-related activities on a sustained basis, ***Thompson v. Sullivan***, 987 F.2d 1482, 1490 (10th Cir. 1993), they do bear on a plaintiff's credibility "to the extent that the level of activity is in fact inconsistent with the claimed limitations," ***Ouellette v. Apfel***, 2000 WL 1262642 at *13 (N.D. Cal. Aug. 24, 2000).

Thus, although there is no doubt that plaintiff continues to suffer from pain and other deleterious effects of her impairments, "disability requires more than mere inability to work without pain." ***Brown v. Bowen***, 801 F.2d 361, 362–63 (10th Cir. 1986) (citation and internal quotation marks omitted); ***see also Qantu v. Barnhart***, 72 Fed. Appx. 807, 811 (10th Cir. 2003) ("We emphasize that a claimant's inability to work pain-free, standing alone, is not sufficient reason to find her disabled."). The ALJ gave good reasons, specifically tied to the evidence of record, for discrediting plaintiff's subjective complaints. I see no basis to afford his credibility determination less than the substantial deference to which it is presumptively entitled.[8]

Plaintiff next argues that the ALJ erred in the manner in which he weighed the various medical source opinions of record. Specifically, she maintains that the ALJ

---

[8] Plaintiff's claim that the ALJ's credibility assessment is faulty because it fails to specifically address the various factors set forth at 20 C.F.R. § 404.1529(c) is unavailing. The regulation requires only that the ALJ consider these factors, not that he explicitly make findings as to each and all of them in his decision, and, thus, the ALJ was not required to undertake the type of mechanical incantation of the evidence on which plaintiff insists. ***See Qualls***, 206 F.3d at 1372

failed to give sufficient weight to the opinions of her treating source, Dr. David W. Yamamoto.  She further claims the ALJ failed to properly evaluate the opinions of two other treating physicians, Drs. Douglas Hemler and Franklin Shih.  Closer examination of these contentions reveals them to be unfounded.[9]

The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record."  20 C.F.R. § 404.1527(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  A treating source opinion cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision.  *Watkins*, 350 F.3d at 1301.  Good cause may be found where the treating source's opinion is brief, conclusory, or unsupported by the medical evidence.  *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).  Even when a treating source opinion is not given controlling weight, it is still entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.972."  **Social Security Ruling** 96-2p, 1996 WL 374188 at *4 (SSA July 2, 1996).[10]

---

[9] Plaintiff also maintains that the ALJ failed to adequately discuss why his 2012 determination of her residual functional capacity differed from that assessed in 2011. (*Cf.* Tr. 584-585 *with* Tr. 719, 721)  However, this discrepancy is fully explained by the fact that the prior decision was issued under the mistaken impression that plaintiff was eligible for benefits during a much longer period of time.  The Appeals Council's instructions on remand specifically directed the ALJ to "reconsider [plaintiff's] maximum residual functional capacity" in light of the realization that her eligibility for benefits ended in early 2006. (*See* Tr. 578.)

[10] These factors include:

1. the physician's length of treatment of the claimant;
2. the physician's frequency of examination;
3. the nature and extent of the treatment relationship;
4. the support of the physician's opinion afforded by the medical evidence of

Dr. Yamamoto, who has treated plaintiff since late 2002, issued two functional capacity assessments, one in 2007 (Tr. 455-463) and one in 2012 (Tr. 934-942). The ALJ did give "some weight" to Dr. Yamamoto's 2007 opinion insofar as it suggested the presence of occasional postural and environmental limitations to the extent they were consistent with the assessment of the medical expert, Dr. Richard Huston, who testified at the 2011 hearing. (Tr. 587.) However, he otherwise discounted Dr. Yamomoto's 2007 restrictions on lifting and carrying with each extremity; standing and walking; and manipulation with the upper extremities. (Tr. 587.) He rejected outright Dr. Yamamoto's 2012 opinion, which imposed even greater restrictions on plaintiff's abilities. (Tr. 591.)

Contrary to plaintiff's suggestion, the ALJ articulated cogent reasons, specifically tied to the evidence of record, for the weight he assigned these opinions. In rejecting Dr. Yamamoto's 2007 lifting and carrying restrictions, for example, he thoroughly recounted the evidence in the record, including the contemporaneous reports of Dr. Hemler, a treating source (Tr. 290), and consultative examiners Drs. Stephen Goodman (Tr. 363-366) and Ray M. Jenkins (Tr. 423-424). Treatment and examination notes from these sources revealed minimal objective evidence to would support the level of impairment suggested by Dr. Yamamoto. (Tr. 588.) Dr. Yamamoto's own treatment

---

    record;
5.  the consistency of the opinion with the record as a whole; and
6.  the specialization of the treating physician.

20 C.F.R. § 404.1527(c)(2)-(6). Nevertheless, the ALJ is required only to consider these factors, not recite them as a litany. *See Mestas v. Astrue*, 2010 WL 3604395 at *3 (D. Colo. Sept. 7, 2010). Where the ALJ thoroughly reviewed the source opinions and gave adequate reasons for the weights assigned to them, as here, remand is not warranted simply because he failed to specifically articulate his consideration of each of these considerations.

notes were noted to be vague and conclusory, and it was not at all apparent that his assessments were premised on actual testing of plaintiff's abilities. (Tr. 590-591.) Based on this evidence and the testimony of Dr. Hutson,[11] the ALJ found plaintiff capable of sedentary lifting (i.e., 10 pounds occasionally and less than 10 pounds frequently) using the left upper extremity with the right as an assist, and less than sedentary lifting on the right. (Tr. 590.)   The ALJ also found that the evidence as a whole supported a restriction during the relevant time period on "repetitive" use of the hands, a term which the ALJ took great care to define, ultimately concluding that the term meant "frequent, but not continuous." (Tr. 589; *see also* Tr. 798 (Dr. Hemler's response to ALJ's inquiry regarding meaning of term "repetitive," confirming that statement did "not imply a total inability to perform competitive employment"), 967-978 (testimony of Dr. Hutson).)[12]  Thus, I fail to discern any reversible error in the ALJ's careful and thorough analysis of these issues.

In rejecting Dr. Yamamoto's 2012 opinion, ALJ noted that there was no

---

[11] Nor is the ALJ's determination subject to remand simply because he placed the greatest weight on the testimony and opinions of the medical expert, Dr. Hutson. Despite the deference usually afforded treating source opinions, they are not sacrosanct, and "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." **Social Security Ruling** 96-6p, 1996 WL 374180 at *3 (SSA July 2, 1996). The record in this case was extensive, and the ALJ therefore was entitled to give weight to the fact that Dr. Hutson had a longitudinal view of the evidence, even if not premised on a treating relationship. The ALJ more than adequately outlined why he found this opinion to be the most consistent with all the evidence of record. (Tr. 586-587.)

[12] There is thus no merit to plaintiff's argument that the ALJ ignored Dr. Shih's limitation on "forceful repetitive gripping and pinching with the right upper extremity." (Tr. 848.) She fails to demonstrate how the ALJ's limitation to frequent manipulation with the upper extremities does not adequately account for this limitation. *See Gallegos v. Barnhart*, 99 Fed. Appx. 222, 224-25 (10th Cir. June 2, 2004) (noting that terms "frequent" and "repetitive" are not synonymous, especially in light of express definition provided in administrative record, and therefore that it was not inconsistent to find that plaintiff could perform jobs requiring frequent reaching, handling, and fingers despite limitation in residual functional capacity on repetitive use of the hands).

explanation for the marked difference between the doctor's 2007 and 2012 assessments. The absence of such an explanation was particularly glaring in light of Dr. Yamamoto's insistence that plaintiff had been as limited as he suggested in 2012 since 2001, i.e., even during the period purportedly covered by his less restrictive 2007 opinion. (Tr. 591, 934.) The ALJ also noted that plaintiff had performed her past relevant work at levels well in excess of Dr. Yamamoto's more lenient 2007 restrictions for several years during the period of time covered by Dr. Yamamoto's opinion. These conclusions are supported by the record and fully articulated in the ALJ's opinion. These matters constitute good cause for the weight the ALJ assigned to Dr. Yamamoto's opinions. *Frey*, 816 F.2d at 513.

Plaintiff also claims the ALJ failed to offer good reasons to discount Dr. Hemler's October 2002 opinion that plaintiff could lift only five to seven pounds occasionally. (*See* Tr. 290.) I find no merit in this contention. Dr. Hemler did not differentiate between plaintiff's lifting abilities as between her right and left upper extremities. The record supports the ALJ's conclusion that plaintiff was more severely limited on the use of her right upper extremity than her left. (Tr. 589-590.) The ALJ also considered the opinions of Dr. Shih, a treating source, and Dr. Hutson in differentiating between the functionality of the right and left upper extremities. (Tr. 584.) Because the determination of a claimant's residual functional capacity is ultimately an administrative determination, 20 C.F.R. § 404.1546; *Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000), not a medical one, the ALJ was under no obligation to base his residual functional capacity assessment on any particular medical source's opinion, *see Moses*

*v. Astrue*, 2012 WL 1326672 at *4 (D. Colo April 17, 2012). In this instance, it is clear that he properly resolved the conflicts in the evidence in reaching his determination. *See Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988); *Gleason v. Apfel*, 1999 WL 714172 at *4 (D. Kan. Sept. 1, 1999). *See also Lax v. Astrue*, 489 F.3d 1080, 1088 (10th Cir. 2007) ("The substantial-evidence standard does not allow [the court] to displace the agencies' choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.") (citation and internal quotation marks omitted).[13]

Plaintiff next claims the ALJ failed to account for a conflict between the vocational expert's testimony regarding alternative jobs within plaintiff's residual functional capacity and the *Dictionary of Occupational Titles* (the "DOT"). Specifically, plaintiff maintains the restriction in her residual functional capacity to only occasional reaching to shoulder height with the right upper extremity was inconsistent with the description of the two jobs identified by the vocational expert. The vocational expert testified that the positions of telephone quotation clerk and document preparer both required frequent reaching but no overhead reaching and are generally performed at table height. (Tr. 1000.)

It is true that, contrary to the ALJ's representation in the decision, he did not question the vocational expert at the hearing regarding any conflicts between the jobs identified and the DOT. (*Cf.* Tr. 593 *with* Tr. 1000-1002.) Such an inquiry is required when there is an apparent conflict between the expert's testimony and the *DOT*'s description of the requirements of the job. **Social Security Ruling** 00-4p, 2000 WL

---

[13] For this same reason, there was no error in the hypothetical the ALJ propounded to the vocational expert. *See Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993).

1898704 at *2-*3 (SSA Dec. 4, 2000); **Haddock v. Apfel**, 196 F.3d 1084, 1091 (10th Cir. 1999). Yet nothing in this record suggests that this is a case in which the alleged conflict was actually "apparent," that is "so obvious . . . that the ALJ should have picked up on [it] without any assistance." **Laughton v. Astrue**, 2009 WL 2372352 at *3 (D. Colo. July 30, 2009) (citation and internal quotation marks omitted). Plaintiff's counsel did not raise the issue or the ALJ's failure to inquire about it, and the vocational expert's testimony that these positions generally required work at table height undermines any suggestion that the limitation imposed on reaching to shoulder height was clearly precluded.[14] Accordingly, any error in failing to inquire specifically about a conflict was harmless, **Bernal**, 851 F.2d at 303, and the ALJ was entitled to rely on the vocational expert's testimony, which constitutes substantial evidence in support of his decision, **see Laughton**, 2009 WL 2372352 at *3.

Lastly, plaintiff maintains that the ALJ should have considered whether plaintiff was entitled to a trial work period or a closed period of benefits. As plaintiff concedes, however, this argument presupposes a determination of disability prior to her date last insured. **See Social Security Ruling 83-10**, 1983 WL 31251 at *8 (SSA 1983) ("Under title II, a period of disability cannot begin after a worker's disability insured status has expired."). Because I have found no infirmity in the ALJ's determination that plaintiff was not disabled during the relevant time period, this argument implodes.

For these reasons, I find and conclude that the disability determination must be

---

[14] The descriptions of these jobs in the DOT itself do not differentiate between reaching at various levels. **See Dictionary of Occupational Titles** 249.587-018, 1991 WL 672349 (4th ed. 1991) (requirements of document preparer job); **id**. 237.367-046, 1991 WL 672194 (4th ed. 1991) (describing requirements of telephone quotation clerk job).

affirmed.

## IV.  ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated March 18, 2014, at Denver, Colorado.

**BY THE COURT:**

*/s/ Robert E. Blackburn*
Robert E. Blackburn
United States District Judge